**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

KIM WATERS,                        :
515 Bolin Terrace
Upper Marlboro, MD 20774      :

      Plaintiff,               :

v.                             :     Civil Action No. _____

DISTRICT OF COLUMBIA       :
Serve:  Muriel Bowser, Mayor
1350 Pennsylvania Avenue, NW  :
Washington, DC 20001
                            :
Serve:  Karl A. Racine, Esquire
Attorney General for DC        :
441 4th Street, NW
Washington, DC 20001         :

      Defendant.            :
_____

**COMPLAINT**
**(Employment Discrimination)**

**Introduction**

    1.   Plaintiff, Kim Waters, brings suit for damages she sustained in violation of Title VII

of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.  Specifically, Kim

Waters contends that her employer retaliated against her by terminating her employment because

of her institution and prosecution of her discrimination and retaliation lawsuit in Case No. 18-

02652 (ABJ), also pending in this Court.

**Jurisdiction & Venue**

    2.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and

-2-

1343(b), as it asserts a claim that arises under the Constitution, laws or treaties of the United

States, specifically Title VII of the Civil Rights Act of  1964, as amended, 42 U.S.C. § 2000e *et.*

*seq.*

3.   Venue is proper in this Court because a substantial part of the acts and omissions

that give rise to this Complaint occurred within the District of Columbia.  Venue is further

proper because Defendant has offices in the District of Columbia.

4.   On or about March 2, 2020 Kim Waters filed a retaliation claim with the United

States Equal Employment Opportunity Commission ("EEOC") arising out of her unlawful

termination.   The EEOC issued a Notice of Rights and Dismissal, which Plaintiff received on or

about March 9, 2020.  This Complaint is being filed within 90 days of receipt of the Notice of

Right to Sue.

**Parties**

5.   Plaintiff, Kim Waters ("Waters"), a female resident of Maryland, has been employed

at the Department of Youth Rehabilitation Services ("DYRS") since 2005.

6.  Defendant, District of Columbia (the "District" or "DC"), a municipal corporation,

functions through various agencies, including DYRS, which is responsible for the supervision,

custody, and care of adolescents charged with delinquent acts in the District of

Columbia.  The District is liable for the actions its managers, supervisors, and other employees

involved in the employment action(s) at issue under the doctrine of *respondeat superior.*

**Statement of Facts**

7.   Waters commenced her employment with DYRS in August, 2005 as a Youth

-3-

Development Representative ("YDR").  Beginning in March 2010 she was assigned to the Youth

Service Center ("YSC").

8.    On or about February 2, 2017 Waters filed a complaint of sexual harassment

with the D.C. Office of Human Rights ("OHR") and alleged that Willie Fullilove, then Deputy

Director of Secured Programs at DYRS, sexually harassed her for approximately one year.  She

subsequently amended her charge with OHR to add claims for retaliation due to the pattern of

unjustified discipline and other acts of retaliation to which she was subjected after filing her

sexual harassment claim.  On or about May 22, 2018 Waters requested and obtained an

administrative dismissal of her OHR claims.

9.    On October 3, 2018 Waters filed her discrimination and retaliation lawsuit

in the Superior Court of the District of Columbia, naming as defendants the District of Columbia,

Willie Fullilove, and Linda Harllee Harper, the second in command at DYRS.  Defendants

removed the case to this Court in November 2018 and it was assigned Case No. 18-02652 (ABJ).

10.   In April, 2019 Fullilove and Harllee Harper were required to appear and testify at

depositions in Case No. 18-02652 (ABJ).

11.   On or about May 21, 2019 Waters was selected for alleged random drug and alcohol

screening.   Waters' screen test yielded a positive result for marijuana use.

12.   Waters has held a medical authorization to use marijuana since August 2015, and

she has been enrolled in the medical marijuana program through the Maryland Medical Cannabis

Commission ("MMCC").  Waters notified her supervisors and also provided them with copies of

her medical authorization to participate in the program.

-4-

13.  Prior to May 21, 2019 Waters had never been selected for drug testing, random or otherwise.

14. Waters remained continuously enrolled in the MMCC program and provided her supervisors and DYRS HR director Lennie Moore ("Moore") with updated information on her program participation, including a copy of her patient identification card that was issued on December 13, 2017 with an expiration date of May 8, 2019.  On May 16, 2019 Waters received an email from MMCC advising that her patient identification card would actually expire on June 16, 2019.  The patient identification card is required for product purchases in Maryland.

15. However, Waters certification for participation in the MMCC program was valid through September 14, 2019.

16.  District Personnel Manual Instruction No. 4-34, Marijuana and the District's Drug & Alcohol Testing ("DPM No. 4-34"), addresses personnel processing of employees who test positive for marijuana use while enrolled in a medical marijuana program, and includes how employees may communicate their participation in the program to be exempt from discipline for a positive drug test.

17.  Waters complied with DPM No. 4-34.  On May 21, 2019 Waters reminded DYRS and DCHR testing personnel that she has been a participant in the MMCC Program.

18.  When Defendant's medical officer telephoned Waters to advise her that her test sample was positive for marijuana use, she informed him of her participation in the MMCC Program.

19. Nevertheless, on or about June 22, 2019 Waters received from Defendant a notice

-5-

proposing to terminate her employment for testing positive for marijuana use while occupying a

safety sensitive position, and she was immediately placed on administrative leave.

20.  On Waters' behalf, the FOP Labor Committee challenged the proposed termination

and invoked the protections of DPM No. 4-34 before the designated hearing officer.

21.  While Waters' challenge to the proposed termination was pending before the

designated hearing officer, she spoke with Moore several times about the matter, and he assured

her the proposed termination would be rescinded, even though he knew he was doing nothing to

stop the process.

22.  In addition, Moore intentionally provided false reassurances to Waters and her union

representative several times that there was no need for Waters to worry, that everything would be

"fine," and that the proposed termination would be rescinded.

23.  Ultimately, the hearing officer ignored DPM No. 4-34 and recommended that the

termination move forward.  The designated final decisionmaker, Justin Zimmerman, adopted

wholesale the recommendation of the hearing officer and on August 1, 2019 issued a final

decision terminating Plaintiff's employment as of August 9, 2019.

24.  On the morning of Friday, August 9, 2019 Moore advised Waters by phone call that

she was being terminated, effective immediately, and he provided her union representative with a

copy of the termination package in the late afternoon that day.

25.  Heretofore Waters had never been disciplined over the course of her employment.

She had successfully performed her job, and on June 4, 2019 DYRS management issued her a

certificate of appreciation in recognition of her "consistent display of teamwork and willingness to always assist your colleagues" in getting the job done.

26.   Prior to Waters' termination at least five (5) other DYRS employees in safety sensitive positions tested positive for marijuana use while in a medically approved program. After those employees provided copies of their registration cards, some did not face any discipline while for others the notices of proposed termination were reversed at the hearing officer level.  None of these employees has engaged in protected activity against defendants herein.

27.   Even DYRS employees who were not enrolled in medical marijuana programs at the time they produced positive test for marijuana use received preferential treatment as compared to Waters because they were not disciplined but provided time to get enrolled in medical marijuana programs.

28.   Moore, Harllee Harper and other DC management personnel knew about the other DYRS employees in safety sensitive positions who tested positive for marijuana use and not terminated.

29.   Despite this knowledge, Moore, Harllee Harper, and other DC management personnel did nothing to ensure that Waters received the same treatment as her DYRS co-workers in safety sensitive positions who also tested positive for marijuana use while enrolled in a medically approved program.

30.   Harllee Harper, Moore and other DC management personnel knew about Waters'

-7-

internal complaints of sexual harassment to DYRS and DCOHR and also the details of her

claims in Case No. 18-cv-02652 (ABJ).  In fact, Moore was the District of Columbia's

designated representative for depositions held in that case on June 4, 2019, and at that time he

demonstrated his utter disdain for the lawsuit and the process.

31.  Despite the fact that Waters followed the processes set forth in DPM No. 4-34 and

Defendants' practice of rescinding proposed terminations for other DYRS employees who had

positive drug tests, Defendant terminated Waters' employment.

32.  By its unlawful actions, Defendant engaged in a concerted effort to terminate

Waters' employment in retaliation for filing and prosecuting this lawsuit.

33.  Waters appealed her termination through the grievance process provided under the

collective bargaining agreement with the FOP Labor Committee.  At each level within the DC

government Plaintiff's grievance was denied.

34.  Thereafter Waters' challenge to the termination proceeded to arbitration.  The April

22, 2020 Arbitration Decision directed DYRS to rescind Plaintiff's termination, expunge any

record of the termination from her personnel files, and reimburse her lost wages and benefits

only.

35.  Defendant's conduct was outrageous, malicious, wanton, reckless, and/or in

willful disregard of Waters' rights under the law.

**Count I**
**Title VII - Retaliation**

36.  Plaintiff restates the allegations set forth in paragraphs 7-35 as if they were fully

stated herein.

-8-

37.  Plaintiff engaged in statutorily protected activity when she filed complaints of sexual harassment with OHR and DYRS on February 2, 2017 and February 3, 2017, respectively, her participation in the resulting investigations, as well as filing and prosecuting Case No. 18-cv-02652 (ABJ) in this Court.

38.  Because of Plaintiff's protected activities Defendant terminated her employment as of August 9, 2019 for testing positive for the use of marijuana even though at the time she was enrolled and participating in the Maryland Medical Marijuana Program, thereby depriving her of the exemption provided by DPM No. 4-34.

39.  Plaintiff's co-workers who had not engaged in protected activity were not terminated or otherwise disciplined for testing positive for marijuana use while participating in medical marijuana programs in the District of Columbia and Maryland, or even some employees who were not enrolled in any program at the time of their drug screening.

40.  There is a causal relationship between Plaintiff's protected activities and Defendant's retaliatory actions against her in violation of 42 U.S.C. § 2000e et. seq.

41.  As a direct and proximate result of Defendant's termination of Plaintiff because of her protected activities, she suffered economic and non-economic losses, including lost wages and benefits, physical and emotional injuries, indignity, humiliation, embarrassment, and emotional distress.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against defendant, District of Columbia, as follows:

(a)  award equitable relief for all harm Plaintiff has sustained as a result of Defendant's

-9-

unlawful conduct, including for loss of any promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

(b)  award Plaintiff compensatory damages in an amount to be determined at trial, but not less than $300,000.00;

(c)  award Plaintiff statutory attorney's fees and costs incurred in bringing and maintaining this claim; and

(d)  award Plaintiff such other and further relief as the interest of justice may require.

### **Jury Demand**

Plaintiff demands a trial by jury on all counts so triable``.

Respectfully submitted,

*/s/  Jeanett P. Henry*
Jeanett P. Henry, Bar No. 411052
8403 Colesville Road
Suite 1100
Silver Spring, MD 20910
(301) 562-1340
(240) 638-2701 (fax)
Email:  jhenry2085@aol.com

*Attorney for Plaintiff*